836 So.2d 559 (2002)
STATE of Louisiana
v.
Kenneth SMOTHERS.
No. 02-KA-277.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*561 Holli Herrle-Castillo, Marrero, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, Andrea F. Long, Counsel of record on appeal, Cameron M. Mary, Trial Counsel, Dominick Tamburo, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
JAMES L. CANNELLA, Judge.
The Defendant, Kenneth Smothers, appeals from his convictions of Counts 1 and 4 of armed robbery and from his sentences on eight counts of armed robbery. We affirm and remand.
On August 17, 2000 the Defendant was charged with eight counts of armed robbery, violations of La.R.S. 14:64. He was tried by a twelve person jury on March 12, 2001, convicted on all eight counts, and sentenced to 99 years imprisonment at hard labor on each count, to be served consecutively.
On appeal, the Defendant asserts that his defense counsel provided him ineffective assistance relative to Counts 1 and 4, that the trial judge erred in failing to grant a mistrial, that the evidence was insufficient as to Count 5, and the sentences were excessive.

Count One
Deputy Jonathan Witman testified that he responded to an armed robbery call on *562 May 20, 2000 at Swifty Serve at 4327 Jefferson Highway. He testified that he was the first person on the scene. He interviewed the victim, Felicia Hawkins, who was somewhat distraught and hysterical. She told Deputy Witman that an unknown black male, wearing a black baseball cap, a blue denim button down shirt and white jeans entered the store and walked around the store toward the back. He approached the counter, placed a nickel-plated, semi-automatic handgun on the counter, and told her to give him all the money out of the drawer. She complied and he exited the store. Deputy Witman reviewed the videotape from the surveillance camera and identified the State's Exhibit 2 as a photograph of the suspect from the videotape. He canvassed the area looking for a suspect, but he was unable to apprehend one that evening.
Sergeant Joe Picone testified that he also investigated the armed robbery at the Swifty Serve. Ms. Hawkins told Sergeant Picone that a black male had entered the store, walked around the store, approached the counter, displayed a handgun, and demanded the money from the register. She described the suspect as a black male in his 30's with a small build. Sergeant Picone later obtained a photograph of the suspect from the store videotape. According to the videotape, the suspect was wearing a long-sleeve light blue shirt and white pants. Ms. Hawkins was subsequently shown a photographic lineup and made a positive identification of the Defendant. She did not testify at trial.

Count Two
On May 25, 2000, a man entered the EZ Serve at 1001 Metairie Road and robbed employee, Alecia Smith, at gunpoint. When the man came into the store, she asked him how he was doing and he took a gun from his pants and told her to give him the money that was in the drawer. After she did so, he instructed her to come from around the counter. He put his gun back in his pants and told Ms. Smith that he was not going to hurt her. The man took her to the back of the store, tied her up, told her to wait 15 minutes, and walked out. Ms. Smith testified that the man was wearing a plaid shirt with khaki shorts, a stocking over his head and a baseball cap. She testified that the gun was long and silver. Ms. Smith identified the State's Exhibit 10 as the gun that the robber produced. She positively identified the Defendant as the perpetrator in the photographic lineup and in court.
Deputy Daniel O'Neil testified that, when he conducted a follow-up investigation, Ms. Smith was nervous and upset. She told Deputy O'Neil that a black male entered the store, produced a handgun, and demanded money. After Ms. Smith complied, the male took her in the back office and tied her up with a phone cord. After the Sheriff's office focused on the Defendant as a suspect, a photographic lineup was compiled. Deputy O'Neil showed it to Ms. Smith, who positively identified the Defendant as the robber.

Count Three
Kelley Peters was employed as the front desk night auditor at LaQuinta Inn on Causeway Boulevard on June 1, 2000. On that date, she was completing her shift when a man entered, pulled out a gun, set it on the desk, and told her to give him all the money that she had sitting out on the register. Ms. Peters later looked at a photographic lineup, but she could not identify the man who robbed her. However, in court, she looked at the videotape of the robbery and positively identified the Defendant as the perpetrator. Ms. Peters further testified that the gun had a silver top and was medium sized. She identified the State's Exhibit 10 as the gun used in the robbery.
*563 Val J. Lacour was the general manager for LaQuinta Inn Causeway at the time. He was in charge of the surveillance system at the hotel. He gave to the Jefferson Parish Sheriff's Office a videotape dated June 1, 2000, State's Exhibit 9.
Detective Williams M. Jones also investigated the robbery at the LaQuinta Inn Causeway. He interviewed Ms. Peters, who told him that a black male had entered the motel armed with a silver handgun and robbed her of money belonging to the business. Detective Jones viewed the videotape from the surveillance camera and compared it to a photograph of the Defendant. He believed that it was the same person. Detective Jones showed a photographic lineup to Ms. Peters who was unable to identify the Defendant as the perpetrator. However, he testified that the Defendant confessed to robbing the LaQuinta Inn.

Count Four
Detective Michael Hoolahan testified that he investigated a robbery on June 3, 2000 at the EZ Serve on Metairie Road. He spoke to the victim, Kimberly Polk, who was extremely upset. She told Detective Hoolahan that a black male had entered the store, pointed a gun at her, and asked for the money. She gave him approximately $100. The man told her to go to the back, but she just stood there. He put the gun back in his waistband and left the store. Detective Hoolahan took possession of the surveillance videotape and turned it over to the robbery division.
Deputy Daniel O'Neil conducted a follow-up investigation. He showed Ms. Polk a photographic lineup and she positively identified the Defendant as the robber. Ms. Polk did not testify at trial.

Count Five
Kim Yambra was a hotel desk clerk at the Landmark Hotel on June 9, 2000 when she was robbed. Ms. Yambra was sitting in the back office when the hotel bell rang. She went to the front desk and saw a man who asked for change for a five dollar bill. When he opened the drawer, the man pulled a "big" silver gun and told her to give him all the money. Ms. Yambra identified the State's Exhibit 10 as the gun used in the robbery.
Detective Scott Fontaine investigated the robbery and spoke to Ms. Yambra. She informed him that a black male with a baseball cap had entered the hotel, produced a silver semi-automatic handgun, and demanded money. Ms. Yambra complied, gave him the money, and he walked out of the hotel lobby. Afterwards, a photographic lineup was compiled which included the Defendant. However, when Detective Fontaine showed Ms. Yambra the photographic lineup, she was unable to identify the Defendant.

Count Six
On June 16, 2000, Patricia Rodrigue was the desk clerk at the Quality Inn in Gretna when a black male came in with a silver automatic gun and said that he wanted all the money in the register. It was her first night on the job and she was standing at the end of the counter. Her trainer, Norma Roussell, was standing behind the register counting the money. Ms. Rodrigue described the robber as wearing a red baseball cap with his hair pulled back. Ms. Rodrigue later positively identified the Defendant in a photographic lineup shown to her by the police and she also identified him at trial. Ms. Rodrigue testified that the gun produced by the State in Exhibit 10 could have been the one the robber used. Ms. Roussell testified that the robber was a black man wearing a red baseball cap. She stated that he walked up to the front desk at approximately 9:00 p.m., went to the water cooler, and then returned to the front desk. Ms. Roussell *564 and Ms. Rodrigue asked the man if they could help him. He responded by pointing a gun at them and demanded that they give him the money. Ms. Roussell opened the cash drawer and gave him the money. She testified that she was nervous and feared for her life. Later, the police showed Ms. Roussell a photographic lineup, but she was unable to identify anyone. However, at trial, Ms. Roussell identified the Defendant in court as the man who robbed them. She also identified the State's Exhibit 10 as the gun used in the robbery.
Detective William M. Jones investigated the robbery at the Quality Inn. He met with Ms. Roussell and Ms Rodrigue and learned that a man armed with a silver, semi-automatic handgun had entered the hotel and robbed them. The victims described the suspect as a black male, 30 to 40 years old, with dark black hair, wearing a cap and light clothing. The police viewed the videotape from the surveillance camera and observed the suspect entering the business. Detective Jones later presented a photographic lineup to Ms. Roussell and Ms Rodrigue. Ms. Roussell was unable to identify the robber, but Ms. Rodrigue positively identified the Defendant.

Count Seven
Donald Watson, Jr. and his sister Monica Watson worked at the Evergreen Plaza Hotel. Mr. Watson was in the maintenance department. Ms. Watson worked as a hotel desk clerk. On June 23, 2000, Mr. Watson went to the hotel lobby. He saw another man enter and go into the bathroom. Mr. Watson followed. He and the man exchanged looks. Mr. Watson then picked up the trash and left to dump the trash. Afterward, Mr. Watson returned to the lobby. At that time, his sister told him that she had been robbed. Mr. Watson stated that the perpetrator was wearing a white sweater and blue jeans. A detective showed Mr. Watson a photographic lineup and he positively identified the Defendant as the man he saw that day. He also positively identified the Defendant in court.
Ms. Watson arrived for work at the hotel a few minutes before 3:00 p.m., and began performing her usual duties of counting the money. She testified that as she did this, a man entered the lobby and went to the restroom. Ms. Watson's brother also came in. The man then went out the front door. Ms. Watson stated that after Mr. Watson left, one of the housekeepers came in and went into the bathroom area. The man then walked back into the hotel, pulled a gun, and told her to give him the money. Ms. Watson gave the robber approximately $300. She stated that the robber was wearing a striped multi-colored shirt and a red baseball cap. Subsequently, in a photographic line-up she positively identified the Defendant as the robber. She also identified the Defendant in court as the man who robbed her. Ms. Watson testified that the gun which the robber used was big and shiny, and she identified the State's Exhibit 10 as the gun that the robber used. Ms. Watson testified that it was her responsibility to make sure that a videotape was in the surveillance camera. She viewed the tape in court and identified it as portraying an accurate representation of the robbery. She testified that the Defendant was the person on the videotape who robbed her.
Detective Scott Fontaine investigated the robbery at the Evergreen Plaza. He spoke to Ms. Watson, who told him a black male had come into the lobby area, walked around, out of the lobby, and back in, disappeared into a hallway where a bathroom was located, walked back outside, then back inside. Once the customer with whom Ms. Watson was dealing left, the man displayed a silver semi-automatic *565 handgun to her and demanded money. She complied and he walked out of the lobby. Detective Fontaine showed the Watsons a photographic lineup and they positively identified a photograph of the Defendant. Detective Fontaine testified that he did not tell the Watsons that others had previously identified the Defendant.

Count Eight
On June 25, 2000, Jayne Belancio was the assistant general manager at the Ramada Inn Hotel on Causeway Boulevard. On that date, at approximately 7:15 p.m., she was checking-in a guest when a man entered. When she asked him if she could help him, he produced a silver gun, pointed it at her chest, and said, "Give me your cash." Ms. Belancio testified that Britt Perrin was working next to her. Ms. Belancio asked Ms. Perrin to open the drawer and hand him the cash. After they gave him the money, the man paused as if he was thinking about something, but he kept the gun pointed at Ms. Belancio's chest. The man turned and walked three feet. Then he turned back again pointing the gun at Ms. Belancio. She and Ms. Perrin did not move or talk. The man said, "Just keep doing what you're doing." He again turned away, walking toward the door, but came back before leaving. After pausing again, he finally went out the glass automatic doors and disappeared. Ms. Perrin then dialed 911, but Ms. Belancio took the telephone and was talking to the operator when the man returned. He saw Ms. Belancio talking in the telephone. When he heard her say to the operator, "He's back," he left the hotel. Ms. Belancio testified that the man was wearing jeans, a white pullover T-shirt, and a red baseball cap. She identified the gun at trial. Although she could not make a positive identification when she viewed the photographic lineup, she positively identified the Defendant in court as the man who robbed her. Ms. Belancio testified that she was in charge of the surveillance system on the night of the robbery. She identified the videotape introduced by the State as the one taken on the night of the robbery. Ms. Belancio testified that the videotape accurately depicted the robbery.
Tammy Duvernay was a hotel guest at the Ramada Inn on June 25, 2000. As she was checking-in for her honeymoon, a man with a short, silver gun came up to the desk demanding money, which the hotel employee gave him. Ms. Duvernay testified that the robber was wearing a baseball cap, a gray shirt with red sleeves, and stained blue jeans. She stated that the gun produced by the State looked like the one used in the robbery. Ms. Duvernay made a positive identification of the Defendant in a photographic line-up.
Sergeant Joe Picone investigated the robbery at the Ramada Inn. He explained that other detectives in his unit were investigating robberies at the time and that the robberies appeared to be similar. Sergeant Picone testified that the physical description of the suspect appeared to be the same, that the videotapes from the scenes were compared, and that it appeared to be the same person in each videotape. In addition, the weapon being used, a silver, semi-automatic handgun appeared to be the same gun used in all of the robberies. After other jurisdictions were notified about this case, Detective Sal Corona provided the Defendant's name to Sergeant Picone. The officers obtained a photograph of the Defendant and compared it to the videotapes. Sergeant Picone stated that the Defendant appeared to be the person committing the robberies in the videotape. Sergeant Picone instructed one of the Detectives to assemble a photographic lineup, using the Defendant's photograph. Duplicates of *566 the same lineup were shown to all of the witnesses.
Sergeant Picone stated that Ms. Duvernay told him that she had just gotten married and was checking into her room when a man appeared at her side. Ms. Duvernay told him that she saw a gun and the person demanding money from the employees. Ms. Belancio and Ms. Perrin also told Sergeant Picone that a man appeared at the counter, displayed a silver gun, and demanded money from the hotel. One of the witnesses told Sergeant Picone that the gun was an automatic. Sergeant Picone presented a photographic lineup to Ms. Duvernay, who made a positive identification of the Defendant. He subsequently presented the photographic lineup to Ms. Belancio and Ms. Perrin. Ms. Perrin was unable to identify the perpetrator and Ms. Belancio made a tentative identification. She pointed to the Defendant's photograph and said that he looked like the person who robbed her, but she was not completely sure.

Additional testimony
Officer James Pledger of the New Orleans Police Department testified that, on June 30, 2000, he was working the night watch alone between 10:25 p.m. and 7:00 a.m. On that date, he stopped the Defendant and seized a bicycle and a handgun with a chrome slide and black handle. Officer Pledger identified the gun and bicycle that he seized from the Defendant (State's Exhibits 10 and 18).
On July 14, 2000, Detective Fontaine and Sergeant Picone met with the Defendant and advised him of his constitutional rights. The Defendant acknowledged that he understood those rights by signing the "rights of arrestee and suspect form" and the form indicating that he waived his rights. He subsequently gave a statement in which he confessed to having committed the eight armed robberies. The audiotape was played for the jury and transcripts of the audiotape of the confession were distributed to them.
Sergeant Picone and other officers went to the Defendant's residence on Louisiana Parkway to attempt to locate evidence with regard to these robberies. The Defendant's sister advised Sergeant Picone that the Defendant did not reside there and she directed them to 3009 Delachaise Street. Sergeant Picone learned from Deborah Thomas, the occupant at that address, that the Defendant had lived there previously. Ms. Thomas agreed to a search and she provided them with a bag of items which she said belonged to the Defendant. Sergeant Picone only took a light blue, long-sleeved Levi shirt from Ms. Thomas' house. He reviewed the surveillance photograph from the videotape of the robbery at Swifty Serve and noted that the person on the videotape was wearing a light blue, long-sleeved shirt, which looked like the shirt which he had seized.

INEFFECTIVE ASSISTANCE OF COUNSEL
On appeal, the Defendant first contends that he received ineffective assistance of counsel relative to counts one and four.
As to Count 1, the Defendant contends that his counsel failed to object to hearsay testimony of the crime facts, failed to object to hearsay testimony of positive identification of a photographic lineup, and failed to object to the lack of authentication and evidence of the chain of custody of the videotape that was retrieved from the Swifty Serve store. As to Count 4, the Defendant contends that his counsel failed to object to hearsay testimony of crime facts and to the hearsay testimony of positive identification of the photographic lineup.
*567 The State responds that allegations of ineffective assistance of counsel are best addressed in an application for post-conviction relief. Alternatively, relief is not warranted, first because the testimony in question was not hearsay. The State asserts that the testimony was offered to explain the sequence of events leading to the Defendant's arrest, and not to prove the truth of the matter asserted. The State next asserts that, if this Court finds the testimony in question to be hearsay, the testimony was still admissible under the "excited utterance" exception to the hearsay rule. La.C.E. art. 803(2). Finally, the State contends that, even if the evidence was improperly admitted, it was harmless error because the Defendant confessed to having committed the robberies.
A Defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The Defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5th Cir.4/26/94), 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the Defendant of a fair trial, or "a trial whose result is reliable." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5th Cir.7/1/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.
In order to show prejudice, the Defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; Soler, 636 So.2d at 1075. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. Addison, 00-1730 (La.App. 5th Cir.5/16/01), 788 So.2d 608, 615.
Claims for ineffective assistance of counsel are most appropriately addressed through application for post-conviction relief, so as to afford the parties an adequate record for review. Peart, 621 So.2d at 787. However, the Court can address the issues if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, State v. Hamilton, 92-2639 (La.7/1/97), 699 So.2d 29, 31, cert. denied, 522 U.S. 1124, 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998); State v. Pendelton, 00-1211 (La.App. 5th Cir.3/14/01), 783 So.2d 459, 465-466.
In this case, we conclude that the issue should be raised in an application for post-conviction relief. An evidentiary hearing may be warranted to fully explore the issues considering the allegations raised by the Defendant. See: State v. Watson, 00-1580, p. 4 (La.5/14/02), 817 So.2d 81, 84.

FAILURE TO GRANT A MISTRIAL
In his second assignment of error, the Defendant contends that the trial judge erred in failing to grant a mistrial when the jury was made aware of other crimes allegedly committed by the Defendant through the introduction of the audiotape and transcript of his confession. He further argues that the trial judge erred in *568 failing to admonish the jury regarding the reference to other crimes.
The State counters that a mistrial was not mandated because the judge, district attorney, or court official did not make the statement at issue, did not prejudice the Defendant, and was only a brief remark contained in a 23 page transcript. It contends that if error, it was harmless. It further argues that since the Defendant failed to ask for a mistrial, the trial judge did not err in failing to grant a mistrial or to admonish the jury.
Evidence of other crimes is generally inadmissible in the guilt phase of a criminal trial unless the probative value of the evidence substantially outweighs its prejudicial effect and unless other safeguards are met. State v. Johnson, 94-1379, p. 9 (La.11/27/95), 664 So.2d 94, 99. An exception to the rule allows evidence of a conviction for impeachment purposes of a witness, or of a defendant that chooses to testify. See: La.C.E. art. 609.1. Johnson, 94-1379, p. 10, 664 So.2d at 99. However, evidence regarding previous arrests, indictments, prosecutions, or other criminal proceedings not resulting in convictions is prohibited. Johnson, 94-1379, p. 10-11, 664 So.2d at 99.
During the hearing on the motion to suppress the identification and statement that was held prior to trial, the State advised the trial judge that the Defendant's confession contained some statements with respect to armed robberies in the French Quarter and in New Orleans East, but that he would excise those prior to trial and ask the judge to give a limiting instruction to the jury with regard to the portions that had been removed, and to tell the jury that they were not to speculate as to what they may have been. The Defendant's counsel added that he would meet with the State prior to trial to make sure he had no objection. At trial, the copies of the confession and the transcript of the audiotape of the statement were introduced into evidence and given to the jury. After a lunch break, the Defendant's counsel discovered a comment that referred to other crimes that had not been removed. He apologized for not finding the reference earlier and asked for a mistrial. The State objected on the basis that the comment was too vague for a layperson to conclude that it referred to another crime. The trial judge agreed and denied the motion. The State then commented that, even if the statement were inadmissible, it was harmless error because the Defendant was not prejudiced. The State pointed out that, although the comment referred to the Defendant being in jail, it did not state the nature of the other crimes. The trial judge agreed, but cautioned the State not to allow other references to other crimes to be placed before the jury, and that it was to be removed if the transcript was shown again to the jury.[1]
The following is the excised portion of the transcript:
Sgt. J. Picone:
Okay as we dis ... we were discussing you're, you're locked up right here in Orleans Parish for what charges?
Defendant:
Armed Robbery.
Sgt. J. Picone:
Okay, multiple charges of armed robbery?
Defendant:
Yes sir.
Sgt. J. Picone:

*569 Okay and that was from arrest by New Orleans Police Department right?
Defendant: Yes sir.
Sgt. J. Picone:
Okay what we talking [sic] to you here today is about a series of robberies which occurred in, in Metairie and Jefferson, out in Jefferson Parish. You aware [sic] of that?
Defendant:
Yes sir.
The following is the portion that the jury heard and viewed in the transcript:
Sgt. J. Picone:
And this is in fact separate from your [sic] in here for now?
Defendant:
Yes sir.
(State's Exhibit 6, pp. 2-3; Emphasis added).
La.C.Cr.P. art. 771 requires the trial judge to admonish the jury to disregard a comment made within the hearing of the jury that is irrelevant, immaterial or prejudicial to the defendant or the state, when an admonishment is requested by the defendant or the state. This article applies to comments by the judge, the district attorney, or a court official, when the remark is not within the scope of Article 770, or to remarks or comments made by any other witness or person, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the trial judge may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. C.Cr.P. art. 771.[2] However, mistrial is a drastic remedy, which is only authorized where substantial prejudice will otherwise result to the accused. State v. Smith, 418 So.2d 515, 522 (La.1982).
In the instant case, all of the references to other crimes were excised except for Sgt. Picone's comment, "And this is in fact separate from your [sic] in here for now?" This unsolicited remark does not refer to any specific crime committed by the Defendant and is vague and ambiguous. Thus, we find that it was not inadmissible evidence of other crimes.
Furthermore, even if the remark did constitute inadmissible other crimes evidence, an improper reference to other crimes evidence is subject to the harmless error rule. State v. Johnson, 94-1379, p. 15 (La.11/27/95), 664 So.2d 94, 102. The test for determining harmless error is whether the verdict actually rendered in the case was surely "unattributable to the error." Id.
In this case, the Defendant's confession and the testimony of the witnesses amply supported the convictions. Furthermore, since the Defendant did not request that an admonition be given to the jury to disregard the reference, the trial judge was not required to provide one. See: State v. Mayer, 589 So.2d 1145, 1151 (La.App. 5th Cir.1991), writ denied, 609 So.2d 251 (La.1992). Thus, we find that the trial judge did not err in failing to grant a mistrial or to give an admonishment to the jury.

INSUFFICIENT EVIDENCE
The Defendant next asserts that the evidence was insufficient to convict him on count five. The Defendant argues that the State failed to prove that he was the *570 perpetrator because the victim, Kim Yambra, could not identify him in court and could not positively identify him in a photographic lineup.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the offense were proven beyond a reasonable doubt. State v. Evans, 00-1766, p. 3 (La.App. 5th Cir.4/11/01), 786 So.2d 781, 783, writ denied, 01-1390 (La.4/12/02), 812 So.2d 664; State v. Williams, 99-223, p. 6 (La.App. 5th Cir.6/30/99), 742 So.2d 604, 607.
When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31, 45 (La.1983); State v. Anderson, 01-789, p. 9 (La.App. 5th Cir.1/15/02), 807 So.2d 956, 960. If there is a conflict in the testimony, the trier of fact is free to accept or reject, in whole or part, the testimony of any witness. Anderson, 01-789 at p. 9, 807 So.2d at 960. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. Id.
In the instant case, the Defendant confessed to committing this robbery in his statement dated July 14, 2000. He recalled robbing the Landmark Hotel, that the victim was a white woman, that he had used the same gun that day that he had used in the other robberies, and that he was using his bicycle for transportation as he had in the other robberies. The State introduced an audiotape of this statement as Exhibit 5 and a transcript as Exhibit 6. In addition, Ms. Yambra recounted the events surrounding the robbery. Ms. Yambra also identified State's Exhibit 10 as the gun used in the robbery, and described the robber to Detective Fontaine as a black male with a baseball cap who was armed with a silver gun, a description similar to that provided by the victims of the other armed robberies. Sergeant Picone testified that all of the robberies appeared to be similar. This testimony, with the confession, is sufficient under Jackson to show that the Defendant was the perpetrator of Count 5 beyond a reasonable doubt.

EXCESSIVE SENTENCE
The Defendant argues that his 792 year sentence for convictions on eight counts of armed robbery is constitutionally excessive. He claims that his sentence is much longer than that ordinarily reserved for murderers, that the evidence on all eight counts was not overwhelming, that no shots were ever fired, that none of the victims was physically harmed during the robberies, that he did not attempt to harm any of the victims, and that only a small amount of money was taken. The Defendant further adds that the trial court only "paid lip service" to La.C.Cr.P. art. 894.1.
The State responds that the sentence imposed by the trial court is not constitutionally excessive. It asserts that La. C.Cr.P. art. 883 authorizes the eight consecutive sentences because the Defendant committed eight separate robberies on eight different days, that the robberies were crimes of violence, that the Defendant was facing a charge of attempted murder of a police officer and other armed robbery charges in Orleans Parish at the time of sentencing, that the Defendant was on parole for a 1979 armed robbery charge *571 at the time he committed the instant offenses, and that the victims were emotionally harmed.
The Defendant orally objected to the sentence and filed a motion to reconsider the sentence. However, he failed to state the specific grounds for the objection, as required by La.C.Cr.P. art. 881.1. In addition, he neither objected to the consecutive nature of the sentences, nor claimed that the trial court failed to follow the guidelines of La.C.Cr.P. art. 894.1.
The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 at p. 16, 746 So.2d at 103. Accordingly, we will review the Defendant's sentence for constitutional excessiveness.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8 La. Const. of 1974, Art. I, Sect. 20; State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Richmond, 734 So.2d at 38; State v. Lobato, 603 So.2d 739, 751 (La. 1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside, absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. La.C.Cr.P. art. 881.4(D); Richmond, 734 So.2d at 38. Nonetheless, a sentence may be reviewed for excessiveness even though it is within statutory range. Richmond, 734 So.2d at 38.
La.R.S. 14:64B provides that whoever commits the offense of armed robbery shall be imprisoned at hard labor for not less than ten years and not more than 99 years, without the benefit of parole, probation or suspension of sentence. Here, the Defendant received the maximum sentence on each count.
Prior to sentencing, the State introduced into the record a copy of the transcript from the motion to suppress hearing. At that hearing, Officer James Pledger of the New Orleans Police Department testified that when he attempted to arrest the Defendant, he started fighting with him, pulled out a weapon, and pointed it at the officer's stomach. Officer Pledger fought with the Defendant and disarmed him by throwing the Defendant's weapon into the bushes. The Defendant charged at Officer Pledger with his hands up in the air yelling, "I'm going to shoot you. I'm going to kill you." Officer Pledger pulled his gun, pointed it at the Defendant, and pulled the trigger; however, the gun malfunctioned. They continued to fight and the Officer sprayed mace in the Defendant's face. Officer Pledger called other officers to the scene. The Defendant grabbed Officer Pledger's testicles and squeezed. Two other police officers arrived and apprehended the Defendant as he was fleeing.
In addition, the evidence showed that the Defendant was currently facing an attempted murder of a police officer charge in Orleans Parish, as well as other armed robbery charges. The State reminded the trial court that the Defendant was out on parole for a 1979 conviction for an armed robbery when he committed these crimes. The Defendant had received 30 years imprisonment *572 for that conviction and was released early.
Prior to sentencing, the trial judge stated:
Mr. Smothers, you've been convicted of eight counts of armed robbery. And after hearing three days of testimony, it is evident that these acts were intentional and violent. The victims of these armed robberies were visibly shaken. And these acts of violence perpetrated by you are life-altering experiences for these victims. There's no doubt that these people feared for their lives. And they will live with your actions for the rest of their lives, Mr. Smothers.
The victims' identification of you was positive and unequivocal. After considering the guidelines of 894.1, your criminal history, and the facts of this case, the Court sentences you to serve 99 years in the Department of Corrections at hard labor on each count. These sentences are to run consecutively with each other and are to be served without benefit of probation, parole, or suspension of sentence.
In State v. Kennedy, 93-776 (La.App. 5th Cir.1/25/94), 631 So.2d 1195, the defendant was convicted of six counts of armed robbery and two counts of attempted armed robbery. The eight counts arose out of four separate incidents, and the victims were not injured. The trial court sentenced the defendant to 50 years imprisonment on each of the six counts of armed robbery, to run consecutively, and to 25 years imprisonment on each count of attempted armed robbery, to run consecutively, for a total of 350 years, to be served without benefit of parole, probation or suspension of sentence. This Court concluded the sentences were not excessive, noting that the victims were placed in grave danger and could have been killed, and that armed robbery was a serious crime and should be dealt with very sternly.
In State v. Alexander, 98-993 (La.App. 5th Cir.3/10/99), 734 So.2d 43, writ denied, 99-2138 (La.12/10/99), 751 So.2d 250, the defendant was convicted of five counts of armed robbery arising out of three incidents. He sentenced to serve 50 years on each count without benefit of parole, probation or suspension of sentence, to run consecutively. This Court concluded that defendant's sentence was not excessive, noting that defendant had a criminal history commencing at a relatively early age, that he had convictions for possession of stolen things and armed robbery, that defendant had just been released from prison in May 1997, and had only been out of prison for two months when he began the spree of armed robberies which resulted in the five armed robbery convictions, the victims were frightened for their lives during the armed robberies, and in one of the robberies, the defendant injured one of the victims when he grabbed her blouse and scratched her chest.
In the instant case, the Defendant committed eight separate armed robberies on eight different days involving ten victims over a five week period. The victims were placed in grave danger and could easily have been killed. They were emotionally harmed as a result of the robberies. The Defendant could have been charged with ten counts of armed robbery since there were ten victims, rather than eight. In addition, he was previously convicted of armed robbery in 1979, sentenced to 30 years in prison, released early and was on parole at the time of the commission of the instant offenses. At the time of sentencing, the Defendant was facing an attempted murder of a police officer charge in connection with this case and other armed robbery charges in Orleans Parish. The Defendant is clearly predisposed to committing robberies and is obviously a career *573 criminal. He is a violent and dangerous man. In his statement, he said he enjoyed committing the robberies. Under these circumstances, we find that the sentences are not constitutionally excessive.

ERROR PATENT DISCUSSION
The record was reviewed for patent errors, in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198.
At the conclusion of sentencing, the trial judge informed the Defendant of the two year prescriptive period for seeking post-conviction relief, but did not tell him when this period began to run. This notice was incomplete. La.C.Cr.P. art. 930.8 provides that a defendant has two years from the day the judgment becomes final in which to file for post-conviction relief. Therefore, we remand the case with an order for the trial judge to send written notice to the Defendant of the prescriptive period, along with a notice of when the period begins to run, within ten days of the rendering of its opinion, then to file written proof in the record that the Defendant received the notice. See: State v. Esteen, 99-662, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, we hereby affirm all eight convictions and sentences. We remand the case with an order to the trial judge to send to the Defendant, within ten days of the rendering of this opinion, written notice of the prescriptive period for post-conviction relief, along with a notice of when the period begins to run, and then to file written proof in the record that the Defendant received the notice.
CONVICTIONS AND SENTENCES AFFIRMED. CASE REMANDED.
NOTES
[1] A review of the transcript shows that on page 21 a large section is blank. It appears that a portion of the statement was blocked out.
[2] La.C.Cr.P. art. 770(2) provides that during trial or argument, when the judge, district attorney, or court official makes a direct or indirect reference to another crime committed or alleged to have been committed by the defendant, in the hearing of the jury, and the evidence is not admissible, a mistrial is warranted on motion of the defendant.