905 So.2d 394 (2005)
STATE of Louisiana
v.
Artis L. BURKS.
No. 04-KA-1435.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*396 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Defendant, Artis Burks, was indicted by a grand jury on March 14, 2002 and charged with aggravated rape, molestation of a juvenile, aggravated crimes against nature, forcible rape, and aggravated incest in violation of LSA-R.S. 14:42, 14:81.2, 14:89.1, 14:42.1, and 14:78.1 respectively. The indictment was amended on May 7, 2003 to add a second count of aggravated incest. Defendant pled not guilty to all six counts and filed several pretrial motions, including a motion to sever the counts which was denied after a hearing.
Defendant proceeded to trial on May 21, 2003. After a three-day trial, a unanimous twelve-person jury found defendant guilty as charged on all six counts. He was sentenced as follows: life imprisonment on count one, aggravated rape, without the benefit of parole, probation or suspension of sentence; fifteen years on count two, molestation of a juvenile; fifteen years on count three, aggravated crime against nature, without the benefit of parole, probation, or suspension of sentence; forty years on count four, forcible rape, without the benefit of parole, probation, or suspension of sentence; and twenty years on each count five and six, aggravated incest, without the benefit of parole, probation, or suspension of sentence. Counts one through four were ordered to run concurrently with each other but consecutively to counts five and six. Counts five and six were ordered to run consecutively with each other and to counts one through four.

FACTS
This case involves six counts and three victims, L.N., S.H., and C.H.[1] Counts one *397 through four of the indictment pertain to L.N., count five pertains to S.H., and count six pertains to C.H. The following information was adduced at trial:
When L.N. was approximately three or four years old, she and her mother lived with defendant.[2] Her first memory of any type of sexual abuse was when she was approximately four or five years old. L.N. testified that defendant took off her shorts and underwear and rubbed his fingers across her vagina and then rubbed his penis against her. At the time, L.N. thought defendant had urinated on her. L.N. stated the next incident occurred when she was between six and seven years old. She explained that she had repeated something she heard and defendant became angry. He stated he would teach her a lesson and proceeded to put his penis in her mouth. L.N. testified that defendant then urinated in her mouth.
L.N. recounted another incident that occurred when she was in the fifth grade. She stated defendant put a pillow over her head, rubbed her chest, and put his hands in her pants while she was sleeping. At that point, defendant started giving L.N. money. She testified that the abuse escalated. When she was eleven years old, defendant brought her to an apartment and told her to undress and get into the shower with him. After the shower, defendant made L.N. lie down on the bed and he performed oral sex on her. He then gave her $100. L.N. recalled another incident when she was eleven years old where defendant called her inside while she was outside playing with friends. She testified defendant locked the door and made her lie on the couch. He took off her shorts and underwear and attempted to penetrate her with his penis. L.N. stated the pain was unbearable and at one point the pain was real sharp. Thereafter, defendant came into her room a few nights a week and placed his fingers inside of her. L.N. testified that defendant first fully penetrated her with his penis when she was twelve years old. She stated things got worse as defendant continued having sexual intercourse with her whenever he wanted. She testified that she never told anyone about the abuse because defendant threatened to beat her and threatened that she would never see her mother or brothers again.
Defendant moved out of the home in 1992 when L.N. was fourteen years old. Approximately one year later, L.N. moved in with defendant for school purposes. Over the next several years, L.N. continued to move back and forth between her mother's home and defendant's home. L.N. continued to live with defendant after he married Leslye Burks in 1995. She testified she and defendant were still having sex even after defendant's marriage to Leslye Burks. In 1996, L.N. went to college in Hammond but periodically visited defendant and stayed overnight. She explained that she was not getting along with her mother at that point and she had no other place to go, until later when she began staying with friends. L.N. testified she and defendant continued to have sexual intercourse "now and then." She said that defendant kept promising to stop and that she was scared that defendant might do something to hurt her brothers if she did not comply.
Leslye Burks had two daughters, S.H. and C.H. At the time Leslye and defendant married in 1995, S.H. was eleven years old and C.H. was eight years old. *398 One month after the marriage, S.H. fell asleep in the hallway doing homework. She woke up when defendant put his hand on her thigh and moved it up under her dress. Over the next few months, defendant commented to S.H. that she was sexy and attractive. S.H. told her mother about the hallway incident and was sent to live with her grandmother for a few weeks. When she returned to the family residence, the inappropriate conduct continued. S.H. testified defendant touched her behind when he passed and came into her room at night and lifted up the covers. S.H. stated defendant's conduct escalated. She explained he started giving her money and asked for sexual favors, such as oral sex and the ability to look at her vagina while he masturbated, in exchange for the money.
In 1997, when S.H. was thirteen years old, she and defendant had sexual intercourse. Around the same time, S.H. had started a sexual relationship with her stepbrother. She became pregnant during the time she was having intercourse with both defendant and her stepbrother. Thereafter, she reported the abuse by defendant to the police. At her family's urging, she later executed an affidavit stating the allegations of sexual abuse were false. As a result, no charges were pursued against defendant.
After the 1997 ordeal, S.H.'s family moved out of defendant's home. However, in 1998, defendant eventually started coming around the house and, by the time S.H. turned fifteen years old, the sexual abuse, including the fondling and sexual intercourse, started again. The abuse stopped when defendant left, which was after L.N. reported the sexual abuse she suffered at the hands of defendant.
S.H.'s younger sister, C.H., testified that defendant did nothing inappropriate while she lived in his home after he and her mother married. She stated that changed when she turned thirteen years old at which time defendant started complimenting her body. At that time, C.H. and her family were no longer living with defendant but she explained he came around their house everyday. The compliments continued for two months and then defendant started giving C.H. money for no reason. Later, defendant started asking to see parts of C.H.'s body, namely her breasts and vagina, in exchange for the money.
C.H. testified about a time when defendant tried to pull her shirt down to see her breasts. She described another incident where she was asleep on the sofa and she woke up to defendant's hand in her shorts. C.H. also told of an incident where she was on the sofa watching television and defendant was standing nearby masturbating while looking at her. Sometime after that incident, defendant asked to perform oral sex on her. C.H. testified that she was thirteen and fourteen years old when these incidents occurred.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant's motion to sever the offenses should have been granted.

DISCUSSION
Defendant argues the trial court erred in denying his motions to sever the offenses. He claims he was prejudiced by having all six counts tried at the same time. He asserts the jury found him guilty based on the volume of charges alone. Defendant further contends the facts were confusing as they involved three different victims. He maintains the jury could not have considered each offense separately.
LSA-C.Cr.P. art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or *399 are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" and if the offenses are triable by the same mode of trial. A defendant properly charged in the same indictment with two or more offenses pursuant to LSA-C.Cr.P. art. 493 may nevertheless move for a severance of the offenses under LSA-C.Cr.P. art. 495.1, which provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
In determining whether prejudice results from a joinder of offenses, the trial court should consider the following factors: 1) whether the jury would be confused by the various counts; 2) whether the jury would be able to segregate the various charges and evidence; 3) whether the defendant would be confounded in presenting his various defenses; 4) whether the crimes charged would be used by the jury to infer a criminal disposition; and 5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Welch, 03-905 (La.App. 5 Cir. 11/25/03), 864 So.2d 204, 207-208, writ denied, 04-0171 (La.2/4/05), 893 So.2d 88 (citing State v. Washington, 386 So.2d 1368 (La.1980)).
A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. State v. Welch, supra at 208. Motions to sever under LSA-C.Cr.P. art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. Id.
Defendant filed two separate motions to sever the offenses. The first motion to sever was filed prior to the amended indictment that added count six. It sought to sever count five, the aggravated incest charge involving S.H., from counts one through four, which involved L.N., on the basis the joinder was prejudicial. The trial court denied the motion to sever after a hearing. The trial court concluded all the counts were triable by the same mode and the joinder was not prejudicial.
Defendant filed a second motion to sever after the indictment was amended to add the sixth count which involved a third victim, C.H. Defendant urged the joinder of all six counts was prejudicial because it would lead to jury confusion, make the jury hostile, and lead the jury to infer defendant had a criminal disposition. Defendant also argued that the sixth count was added to close the setting of trial and that defendant did not have adequate time to prepare a defense to this count. This motion to sever was heard on the morning of trial and denied. The trial court reiterated that joinder of the counts was proper and further noted that defense counsel was aware of the charges listed in the sixth count due to a State motion to admit other crime evidence which was submitted months before the date of trial.
The indictment in this case identified the victim of each charge by her date of birth. The jury was read the indictment which alleged the sexual abuse of the victim born on August 10, 1978, was alleged to have occurred at various times with count one occurring sometime between 1989 and 1990, count two occurring between 1981 and 1995, count three occurring between 1984 and 1995, and count four occurring between 1996 and 1998. Count 5 listed the abuse of the victim born on January 7, 1984 and was alleged to have occurred over a five-year period between 1995 and 2001. Count 6 listed the abuse of the victim born on November 16, 1986, was *400 alleged to have occurred sometime between 1999 and 2002. While most of the counts involved offenses that occurred when the victims were juveniles, count four allegedly occurred after one of the victims reached the age of majority. Two of the victims were over the age of eighteen when they testified at trial and two of the victims testified defendant engaged in sexual intercourse with them.
There are several cases where appellate courts have upheld the denial of a motion to sever numerous sex offenses involving multiple victims. In State v. Bray, 548 So.2d 350 (La.App. 4 Cir.1989), the Fourth Circuit found no error in the trial court's denial of defendant's motion to sever four counts of sex offenses involving three different victims who were all siblings.
In a similar case, State v. Roca, 03-1076 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, writ denied, 04-0583 (La.7/2/04), 877 So.2d 143, this Court determined a severance was not warranted where defendant was charged with aggravated rape, aggravated rape of a juvenile, oral sexual battery of a juvenile, and molestation of a juvenile which involved different victims, defendant's biological daughter and his girlfriend's daughter. This Court further stated the evidence of each offense would have been admissible as other crimes evidence at the trial of the other offense to show defendant's propensity to sexually abuse young females under his supervision and care under LSA-C.E. art. 412.2. See also, State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35.
In State v. Evans, 03-752 (La.App. 5 Cir. 12/9/03), 864 So.2d 682, 695, writ denied, 04-0080 (La.5/7/04), 872 So.2d 1079, this Court again determined a severance was not warranted where defendant was charged with two counts of attempted rape, one count of attempted aggravated rape and one count of armed robbery which involved more than one victim despite defendant's claim that the jury would be confused and would infer his guilt.
In the present case, the evidence shows that the multiple counts, although perpetrated upon different victims and at different times, occurred under strikingly similar circumstances. Consequently, we find that the counts are of the same or similar character as contemplated by La.C.Cr.P. art. 493 and were, therefore, properly charged in the same bill of indictment. We further fail to find that defendant has failed to meet the heavy burden of proving he was prejudiced by the joinder of these offenses.
The evidence presented by the State through the testimony of the victims was clear and consistent, and it is highly improbable that the jury was confused by the multiple counts involving the three victims. In fact, the jury deliberated for a period of less than two hours without asking for any type of clarification. The verdict reached was unanimous. Further, although the indictment listed the victims by date of birth only, the trial testimony of each of the victims included her name, her date of birth, her age at the time of the offenses and her age at trial. Finally, defendant offered no evidence that the joinder of the offenses hindered his right to present a defense.
Further, as pointed out in State v. Roca, supra, and State v. Lyles, supra a trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense in determining whether a severance of offenses is warranted. Id., 866 So.2d at 873-874. La. C.E. art. 412.2 allows for the introduction of evidence of similar crimes in cases involving sex offenses involving a victim who was under the age of seventeen at the time of the offense. See also, La. C.E. art. 404(B).
*401 In the present case, the evidence of each offense is relevant to establish defendant's propensity to sexually abuse young females who were the children of women with whom he was involved. The evidence of the offenses committed against any of the victims could have been introduced at the trial of the crimes committed against any of the others. Thus, the trial court did not abuse its discretion in denying defendant's motion to sever. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Only the first statement by Leslie Nelson to Rainie Celestine should have been allowed into evidence.

DISCUSSION
Defendant argues that the State's witness, Rainie Celestine, should not have been allowed to testify about all the statements L.N. made to her about the sexual abuse. He contends the statements, except the very first statement, should have been excluded on the basis they were hearsay. Defendant concedes L.N.'s initial complaint of sexual abuse to Ms. Celestine falls within the hearsay exception but maintains Ms. Celestine was impermissibly allowed to testify about all conversations she had with L.N. over a period of several weeks. Defendant asserts the jury was strongly influenced by Ms. Celestine's testimony and, therefore, the hearsay testimony was not harmless error.
Ms. Celestine testified that, in December 2000, L.N. told her about the sexual abuse. Ms. Celestine stated the conversation took place over a couple of weeks. She testified that L.N. initially stated she had a secret that no one knew about her. Defendant objected on the basis the conversations were hearsay. Defendant agreed the first report was a hearsay exception but objected to the multiple conversations that occurred over the several weeks. The trial court ruled it was one ongoing conversation and effectively overruling defendant's objection.
Ms. Celestine proceeded to testify that the day after the initial conversation L.N. again stated she had a secret she had never told anyone. Approximately one to two weeks later, Ms. Celestine and L.N. were talking and L.N. again stated she had a secret that nobody knew about. Ms. Celestine asked L.N. if she had been molested or raped at which time L.N. started crying. L.N. then told Ms. Celestine that defendant had been sexually abusing her since she was a child. Ms. Celestine specifically recounted one incident L.N. described that involved defendant placing his penis in L.N.'s mouth to teach her a lesson. Ms. Celestine testified L.N. told her about other incidents but she could not remember if L.N. told her on the same day. During one conversation, L.N. explained the abuse was the reason she sometimes refused defendant's phone calls.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). Subsection (D) of LSA-C.E. art. 801 sets forth certain statements that are not considered hearsay. LSA-C.E. art. 801(D) provides in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
....
(d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
*402 The record shows L.N. first reported the sexual abuse to Ms. Celestine. The account of the incident given by Ms. Celestine corresponded with L.N.'s own testimony and L.N. was subject to cross-examination. Therefore, Ms. Celestine's testimony about the sexual abuse constitutes admissible non-hearsay under LSA-C.E. art. 801(D)(1)(d). Defendant does not contest that Ms. Celestine was the first person to whom L.N. reported the abuse, but argues that Ms. Celestine should have been limited to testifying only about the first conversation she had with L.N. as opposed to the multiple conversations the two had over several weeks.
In State v. Hillman, 613 So.2d 1053, 1061 (La.App. 3 Cir.1993), writ denied, 617 So.2d 1181 (La.1993), the Third Circuit concluded that the fact the victim told the witness "the details of the defendant's acts of molestation over a period of time, rather than all at once does not remove the [witness' testimony] from the provisions of La.C.E. Art. 801D(1)(d)." Therefore, we find that the trial court properly admitted the entirety of Ms. Celestine's testimony.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The Trial Court erred by denying the defendant's motion for a mistrial.

DISCUSSION
Defendant argues he was entitled to a mistrial when the prosecutor asked him about an arrest warrant issued in Memphis, Tennessee. He contends the question was an impermissible reference to other crimes evidence. Defendant asserts the question was prejudicial because the charge upon which the arrest warrant was based was similar to the charges for which he was currently on trial.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial unless the probative value of the evidence substantially outweighs its unfair prejudicial effect and it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. LSA-C.E. arts. 403 and 404; State v. Tuckson, 00-1408 (La.App. 5 Cir. 2/28/01), 781 So.2d 807, 814, writ denied, 01-1129 (La.1/25/02), 806 So.2d 671. A statutory exception to this exclusionary rule is set forth in LSA-C.E. art. 609.1, which allows evidence of a conviction for impeachment purposes of a witness, or of a defendant that chooses to testify. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99. However, evidence regarding previous arrests, indictments, prosecutions, or other criminal proceedings not resulting in convictions is not admissible to impeach. Id.; State v. Smothers, 02-277 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, 568, writ denied, 03-0447 (La.10/10/03), 855 So.2d 329.
Defendant testified on his own behalf at trial. On cross-examination, he testified that he was questioned by the police the day before he left to travel around the southern states on business.[3] He stated his trip had been pre-planned and that he was not running from the police. Defendant testified the police never told him he was being investigated for aggravated rape and told him to go about his business. He stated he traveled between May 2001 and January 2002 but turned himself in once he found out he was wanted by the police.
During cross-examination, the prosecutor inquired as to why defendant left Memphis. Defense counsel objected on the basis of relevance which was overruled without discussion. Defendant proceeded *403 to explain that he was an entertainer and liked to travel to different places. He stated he came to New Orleans in 1972 after he got out of the military. The prosecutor then asked defendant whether he went back to Memphis in April 1974 and whether he remembered being arrested on April 19, 1974.[4] Defense counsel objected claiming the prosecutor could only inquire about convictions as opposed to arrests.
At a bench conference, the State explained defendant was arrested in Memphis for accessory before and after the fact of rape and that he had told L.N.'s mother he left Memphis because of a rape allegation. The State argued the evidence was relevant because defendant was denying that he fled the jurisdiction after the current charges. Defense counsel maintained that it was inadmissible other crimes evidence. The trial court found the evidence was admissible based on the State's contention that defendant fled the jurisdiction after the current charges to avoid an investigation and had previously fled another jurisdiction for the same reason. Defense counsel subsequently moved for a mistrial which was denied.
The prosecutor proceeded to ask defendant whether he left Tennessee to flee an allegation of other sexual charges. Defendant replied in the negative. During its rebuttal case, the State presented the testimony of L.N.'s mother who stated defendant told her he left Tennessee because of a sex charge. The State also provided the testimony of Detective Chris Fisher who stated he advised defendant on May 21, 2001 that he was under investigation for aggravated rape. Defendant declined to give a statement and Detective Fisher told defendant he was going to seek an arrest warrant. Detective Fisher obtained the arrest warrant the next day but was unable to find defendant.
LSA-C.Cr.P. art. 770 provides that a mistrial shall be ordered when the district attorney makes a remark or comment within the hearing of the jury referring directly or indirectly to "[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]" While we find that the trial court may have erred in allowing evidence of the Tennessee incident, the introduction of inadmissible other crimes evidence is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102; State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 980. An error is harmless when the verdict is "surely unattributable to the error." State v. Johnson, supra, at 102.
In the present case, defendant denied committing any of the charged offenses. The evidence against him consisted of each victim's testimony. The victims' testimonies were very detailed and the details of the sex abuse were very similar among the victims. Under these circumstances, we find that the evidence presented in this case was overwhelming and the verdict in this case was not attributable to any error by the trial court in admitting this evidence. Thus, we conclude that admission of defendant's prior arrest was harmless.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). The following matters require corrective action:
*404 First, while the commitment indicates defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8, the transcript does not so reflect. Where there is a conflict between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Accordingly, the trial court is hereby instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received said notice. State v. Alo, 04-62 (La.App. 5 Cir. 10/12/04), 886 So.2d 1130, 1133, writ denied, 04-2992 (La.3/24/05), 896 So.2d 1035.
Secondly, the trial court imposed an illegal sentence on count five, aggravated incest. The trial court sentenced defendant to twenty years at hard labor without the benefit of parole, probation, or suspension of sentence on count five, aggravated incest, but LSA-R.S. 14:78.1 does not provide for the restriction of benefits. Therefore, we hereby amend the sentence to delete the restrictions on count five and we order the trial court to correct the commitment accordingly. See State v. Uloho, 04-55 (La.App. 5 Cir. 5/26/04), 875 So.2d 918, 934, writ denied, 04-1640 (La.11/19/04), 888 So.2d 192.
Thirdly, LSA-R.S. 14:78.1(E)(1) requires that in addition to any sentence imposed for aggravated incest, "the court shall, after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense." The sentencing transcript does not reflect that the trial judge complied with this statute; therefore, we remand this matter to the trial court for compliance with LSA-R.S. 14:78.1(E). See, State v. Bolden, 04-1000 (La.App. 5 Cir. 3/1/05), 901 So.2d 445.
Finally, there is a discrepancy between the commitment and the sentencing transcript. The commitment reflects that all six counts were imposed without benefit of parole, probation, or suspension of sentence. The transcript shows only counts one, three, and four were imposed without benefits.[5] Also, the commitment contains errors as to the consecutive and concurrent nature of the sentences. The sentencing transcript reflects counts one through four were ordered to run concurrently with each other and consecutively with counts five and six and counts five and six were ordered to run consecutively. Where there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, the trial court is hereby ordered to correct the commitment to insure an accurate record.

CONCLUSION
In accordance with the above, we hereby affirm defendant's convictions. We also hereby amend the trial court's sentence on count five to delete the restriction of benefits and we order the trial court to correct the commitment accordingly. Further, we remand this matter with instructions to the trial court to correct the errors patent noted by this opinion.
CONVICTION AFFIRMED; SENTENCE AMENDED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] The victims' initials are used under the authority of LSA-R.S. 46:1844(W)(3) which allows the Court to identify a crime victim who is a minor or a victim of a sex offense by using his or her initials.
[2] Defendant had two sons with L.N.'s mother but the two never legally married.
[3] Defendant explained he was trying to find people to help him start a record label.
[4] The record contains the dates of 1974 and 1984. It appears 1974 is the correct date.
[5] The transcript also shows count five was imposed without benefits but as noted supra such a restriction was illegal.