STATE OF LOUISIANA                    NO. 23-KA-335

VERSUS                                FIFTH CIRCUIT

EDWAR LOPEZ AKA "MANTEQUILLA"         COURT OF APPEAL

                                      STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-5544, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING


August 21, 2024


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois


**CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART**
    **SMC**
    **JGG**

**WICKER, J., CONCURS IN PART, DISSENTS IN PART**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Darren A. Allemand
Douglas E. Rushton, Jr.
Leo M. Aaron

COUNSEL FOR DEFENDANT/APPELLANT,
EDWAR LOPEZ
Jane C. Hogan

DEFENDANT/APPELLANT,
EDWAR LOPEZ
In Proper Person

**CHEHARDY, C.J.**

Defendant seeks review of his convictions and sentences for second degree murder and obstruction of justice. For the following reasons, we affirm defendant's convictions for second degree murder and obstruction of justice. We vacate the portion of defendant's sentence that imposed court costs, fines, and fees, but the remainder of defendant's sentences are otherwise affirmed.

**PROCEDURAL HISTORY**

On September 19, 2019, a Jefferson Parish Grand Jury returned a bill of indictment charging defendant, Edwar Lopez a/k/a "Mantequilla," with the second degree murder of Jesus Fructuoso in violation of La. R.S. 14:30.1 (count one) and obstruction of justice in violation of La. R.S. 14:130.1 (count two). Thereafter, following pre-trial proceedings, including a June 16, 2021 hearing addressing defendant's motion to suppress evidence, which was denied by the trial court, defendant proceeded to trial. On December 14, 2022, a unanimous jury found defendant guilty as charged on both counts. The trial court sentenced him to life in prison without the benefit of parole, probation, or suspension of sentence as to count one, and to forty years imprisonment at hard labor as to count two, with the sentences to be served consecutively. Defendant now appeals, arguing the evidence is insufficient to support his convictions, the trial court erred in denying his motion to suppress evidence, and the trial translator was not competent.

**FACTS**

On Friday, May 17, 2019, around 10:00 p.m., at the intersection of 18th Street and Hessmer Avenue at the Ideal Market in Metairie ("the Ideal Market scene"), there was an altercation between two groups. Defendant was in one of the groups along with four of his friends: Luis Martinez, Didier Flores-Barahona, Yeyson Ponce, and Mario Juarez. At trial, Mr. Ponce and Mr. Flores-Barahona testified about the Ideal Market scene altercation. Mr. Ponce, who knows

23-KA-335                                           1

defendant as "Mantequilla," testified that he and his group went to the Ideal Market scene to fight Felix Arriola and his group. Mr. Flores-Barahona said he was stabbed during the altercation, and Mr. Ponce thought Mr. Arriola was shot in the leg. Mr. Ponce later testified he was not sure what happened to Mr. Arriola. Both Mr. Ponce and Mr. Flores-Barahona said defendant fired gunshots toward the other group at the Ideal Market scene after the stabbing. After defendant fired the gun, defendant's group ran, leaving the scene in Mr. Martinez's Honda Civic. Mr. Flores-Barahona testified that Mr. Martinez was the driver, with Mr. Ponce in the front passenger seat, and he was in the middle back seat with defendant seated to his right and Mr. Juarez seated to his left. However, Mr. Ponce testified that defendant was in the backseat, seated to the left of Mr. Flores-Barahona.

Jesus Fructuoso, the victim, lived in an apartment around the corner from the Ideal Market. That night, he was outside of his apartment drinking beer with his pregnant girlfriend, Tinesha Jackson, their friend Lucy Matute, and some neighbors. Ms. Jackson testified that while they were outside, they saw a group of people walk down the street, then they heard an altercation, and they saw a group of people run back towards their apartment. Ms. Jackson said the victim decided to follow a Honda Civic fleeing the scene because he wanted to help. She also characterized the victim as being intoxicated. The victim followed the Civic in his Toyota Camry, with Ms. Jackson in the front passenger seat and Ms. Matute in the back passenger seat.

Mr. Ponce and Mr. Flores-Barahona both testified that after they left the Ideal Market scene, they noticed a car chasing them. Mr. Ponce said he thought they were being chased because of what had happened with Mr. Arriola, and he felt his life was in danger during the chase. Mr. Flores-Barahona testified that while traveling down Veterans Boulevard, Mr. Juarez and defendant were passing a gun between them and shooting out of the window at the car following them.

Mr. Ponce said he turned around and saw defendant shooting, and he heard defendant say that they could not stop because they were going to be killed. Mr. Flores-Barahona said that he never saw anyone from the other car shooting. After the gunshots were fired, they eventually lost sight of the car following them. Mr. Martinez was attempting to get on the interstate, but stopped the car because he realized he had turned onto the service road right before the interstate. While they were stopped, Mr. Ponce testified that the other car approached them traveling the wrong way on a one-way street. Mr. Ponce said defendant leaned across the middle seat, put his hand out of the back right window and fired a shot toward the other car, which then crashed. Mr. Flores-Barahona explained that after the other car crashed, they left the scene and dropped off Mr. Ponce first, then he was taken home. Mr. Flores-Barahona recalled that defendant kept the gun. Mr. Ponce said he learned from the news that someone had died.

Ms. Jackson testified to the events as they occurred in the victim's car. As the victim followed defendant's group down Veterans Boulevard, headed towards Kenner, Ms. Jackson recalled hearing and seeing a gunshot from the Civic. She told the victim to return home. She explained that the victim, however, continued to follow the Civic because he wanted to take a picture of the Civic's license plate. The victim followed the Civic through neighborhoods in Metairie, but they lost sight of the car. Ms. Jackson recalled that while they were close to the Marriott located near the service road, the victim accidentally turned down a one-way street and met up with the Civic, which was parked on the same one-way street. As the victim drove past the Civic, Ms. Jackson saw a single gunshot come from the left side of the Civic, hitting the victim in the left side of his head. The victim's car then crashed. Ms. Matute put the car in park, and Ms. Jackson called 9-1-1. EMS arrived and pronounced the victim dead at the scene.

Ms. Jackson did not see who fired the gunshot, but she said it appeared there were two people in the front seat of the Civic and several in the back seat. Ms. Jackson testified that they did not have a gun in the victim's car and no one threatened the people in the other car with a gun. While following the Civic, Ms. Jackson said the victim was never as close as a car's length away, he did not try to run the Civic off the road, and he never crashed into the Civic.

Dr. Ellen Connor, an expert in forensic pathology, opined that the victim's cause of death was a gunshot wound to his head and the manner of death was homicide. She was able to recover a projectile from the right side of the victim's skull. She also testified that the victim's blood alcohol was .114%, which is over the legal limit of .08%.

Deputy Michael Morrison of the Jefferson Parish Sheriff's Office ("JPSO") testified that he was parked on Hessmer doing paperwork when he heard the faint sound of a gunshot. He saw a Lexus traveling on Hessmer, so he drove toward the car and spoke with the occupants, who advised Deputy Morrison that they also heard a gunshot at the Ideal Market scene. One of the passengers turned out to be Mr. Arriola, who had a cut on his hand. Deputy Morrison said that the occupants agreed to return to the Ideal Market scene and show him where the gunshot was fired. Deputy Morrison found one ammunition casing on the ground at the Ideal Market scene.[1]

Detective Scott Bradley with the JPSO was the lead investigator in this case. He testified that a knife and three cell phones were recovered from the victim's vehicle.[2] On the night of the murder, he interviewed Mr. Arriola and the individuals Deputy Morrison encountered in the Lexus. He learned that Mr.

---

[1] Emily Terrebonne, an expert in firearms and toolmark analysis, examined the casing found at the Ideal Market scene and the projectile recovered from the victim. She opined that the casing and the projectile are consistent with being fired from the same type of gun.

[2] Ms. Jackson acknowledged there were knives in the car because she sold knives for CutCo.

Arriola was part of the opposing group fighting with defendant's group. Detective Bradley reviewed the surveillance video and Mr. Arriola was later identified as the person who stabbed Mr. Flores-Barahona.

On Monday, May 20, 2019, Mr. Ponce contacted Detective Bradley with information regarding the homicide. Detective Bradley and Detective Jesus Falcon met with Mr. Ponce at the police department, where Mr. Ponce gave a recorded statement. Mr. Ponce provided him with the names of everyone in Mr. Martinez's Civic and Mr. Martinez's address. Mr. Ponce also identified defendant as the person who fired the gun. The detective further testified that Mr. Ponce gave him a copy of a previously recorded conversation between Mr. Ponce and defendant in which they discussed that the news reported a man had died. A certified translation of the call was played for the jury, in which defendant said, in part, "I got him in the head."

Detective Bradley obtained a search warrant for Mr. Martinez's Civic, which did not have a license plate and appeared to have been cleaned recently. A sample of blood was collected from the rear passenger seatbelt.[3] Mr. Martinez was arrested for second degree murder and obstruction of justice.

Detective Bradley located Mr. Flores-Barahona at his residence, and he provided a recorded statement to Detective Bradley. During trial, Detective Bradley confirmed that he received the medical records for Mr. Flores-Barahona's stab wound, and he admitted that he had given a fake name to the medical staff who treated him and told them he was cut while on the river.

Detective Bradley obtained an arrest warrant for defendant. Using defendant's cell phone GPS, Detective Bradley located him in Panama City, Florida. Defendant's cell phone was seized and searched pursuant to a search

---

[3] Sitara Shirwani was accepted as an expert in DNA forensic analysis, and she opined that there was very strong support that the blood recovered from the seatbelt was Mr. Flores-Barahona's blood.

warrant. From defendant's phone, Detective Bradley obtained the number of Mr. Juarez, the fifth person in defendant's group. Detective Bradley obtained an arrest warrant for Mr. Juarez, and later learned that he had left the country.

Nicholas Schlacter with the JPSO testified that he extracted defendant's cell phone data, which revealed the times calls were placed between defendant and his group of friends. The extraction also included photographs of defendant that were published to the jury. Detective Bradley added that photographs of the victim's apartment building were located on defendant's cell phone.

Detective Jean Lincoln with the JPSO testified that she obtained video footage from the Ideal Market scene, which captured part of the altercation with defendant's group, including the stabbing of Mr. Flores-Barahona and gunshots fired by defendant. Detective Lincoln also collected a bloody, serrated knife from a planter on the Ideal Market scene.

Detective Lincoln also obtained video footage from several businesses around the I-10 service road. She testified that the videos confirmed the victim's car was following the Civic. One of the videos depicted the Civic traveling down the I-10 service road and turning on 28th Street where the car stopped. The video also depicted the victim's car driving down the service road going the wrong way before the victim was shot and his car crashed. Detective Lincoln created a compilation video which was published to the jury.

When viewing Detective Lincoln's compilation video, Mr. Ponce identified defendant, himself, Mr. Flores-Barahona, and Mr. Martinez in the video. In the portion of the video from the Ideal Market scene, he pointed out when Mr. Arriola stabbed Mr. Flores-Barahona and when defendant responded with gunshots. In another portion of the video, Mr. Ponce identified when defendant fired the fatal shot from Mr. Martinez's Civic.

## LAW AND DISCUSSION

On appeal, defendant sets forth three counseled assignments of error and one *pro se* assignment of error. In his first counseled assignment of error, defendant argues the evidence is insufficient to convict him of second degree murder, and the State failed to disprove that the shooting was in self-defense. In defendant's *pro se* assignment of error, he argues the jury's verdict was in error because all of the evidence supports his defense that the homicide was justified by self-defense. Due to the interrelated nature of the assignments, we will address them together.

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. Under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require this Court to determine whether the evidence at the trial established guilt beyond a reasonable doubt but rather whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1103. Additionally, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *State v. Burnham*, 16-468 (La. App. 5 Cir. 2/8/17), 213 So.3d 470, 474, *writ denied*, 17-664 (La. 4/6/18), 240 So.3d 184. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *McKinney*, 304 So.3d at 1103.

Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Woods*, 23-41 (La. App. 5 Cir. 11/15/23), 376 So.3d 1144, 1155, *writ denied*, 23-1615 (La. 5/29/24), 385 So.3d 700. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *Id.* All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id.* Evidence of flight, concealment, and attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the trier-of-fact may infer guilt. *State v. Davis*, 18-485 (La. App. 5 Cir. 4/10/19), 269 So.3d 1123, 1132, *writ denied*, 19-716 (La. 11/12/19), 282 So.3d 229.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Pike*, 18-538 (La. App. 5 Cir. 5/8/19), 273 So.3d 488, 494, *writ denied*, 19-927 (La. 2/10/20), 292 So.3d 60.

*Second Degree Murder*

Defendant contends that there is insufficient evidence to support the second degree murder conviction. He argues that the State failed to disprove that the shooting was in self-defense and failed to prove beyond a reasonable doubt that he

was the shooter, given conflicting testimony as to where he and Mr. Martinez were seated in the car and who fired the gun. Defendant provides that the aggressor doctrine is inapplicable here. He asserts that Mr. Ponce's testimony regarding defendant shooting Mr. Arriola in the leg was impeached and that both Mr. Ponce and Mr. Flores-Barahona were testifying to help themselves. Defendant further avers that the shooting occurred under extreme circumstances which supports only a conviction for manslaughter. He contends that the victim provoked the situation by his relentless and aggressive pursuit, which is similar to road rage. He also argues that the State did not prove that he had the specific intent to kill the victim. He concludes that his conviction, therefore, should be reduced to manslaughter.

The State argues that it proved defendant's identity as the killer because two witnesses identified defendant as the shooter and he essentially admitted to being the shooter during the phone call Mr. Ponce recorded between himself and defendant. It also contends that it disproved that the shooting was justified. The State provides that defendant had no basis for a reasonable belief of imminent danger of losing his life or receiving great bodily harm or a reasonable belief that the killing was necessary to save himself from that danger. The State avers that defendant had other options rather than killing the victim. Further, the State asserts that defendant did not prove that he was entitled to a manslaughter verdict. It explains that there were not sufficient threats or actions by the victim to constitute sufficient provocation.

Here, defendant was convicted of second degree murder in violation of La. R.S. 14:30.1. The indictment charged defendant with committing the second degree murder during the perpetration or attempted perpetration of an assault by drive-by shooting. The jury was instructed as to both the specific intent and felony murder elements of second degree murder. The jury was also presented with manslaughter as a responsive verdict and instructed as to justifiable homicide.

La. R.S. 14:30.1 defines second degree murder as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though the offender has no intent to kill or to inflict great bodily harm. *State v. King*, 22-371 (La. App. 5 Cir. 5/24/23), 365 So.3d 897, 907, *writ denied*, 23-790 (La. 1/17/24), 377 So.3d 242. Felony second degree murder is defined by La. R.S. 14:30.1(A)(2) as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including assault by drive-by shooting. One need not possess specific intent to kill or inflict great bodily harm to commit second degree felony murder. Rather, under the felony murder theory, the State need only prove the commission of the underlying felony or the attempt thereof. *Id.*

An assault by drive-by shooting is defined in La. R.S. 14:37.1(A) as an "assault committed with a firearm when an offender uses a motor vehicle to facilitate the assault." At the time of the offense, La. R.S. 14:37.1(C) detailed that the term "drive-by shooting" as used in that section and in La. R.S. 14:30(A)(1) is "the discharge of a firearm from a motor vehicle on a public street, or highway with the intent either to kill, cause harm to, or frighten another person." La. R.S. 14:37.1(C); *State v. Joekel*, 19-334 (La. App. 5 Cir. 12/20/19), 2019 WL 7044739 at *3, *writ denied*, 20-86 (La. 1/14/20), 286 So.3d 430.

Defendant argues that the State failed to disprove that the shooting was in self-defense. In his *pro se* brief, defendant argues that the evidence supported a finding of justifiable homicide. He contends that the knife used in the stabbing was likely a CutCo knife. He asserts that after the stabbing, which he described as severe, his group fled and was chased by the victim, who was driving erratically at a high speed. Defendant contends that the victim was undeterred by the warning shots fired from the vehicle defendant's group occupied. He provides that the

occupants of his vehicle felt that their lives were in danger. He states that his group withdrew from the conflict and that the victim's vehicle trapped their vehicle, preventing further withdrawal. Defendant concludes that the jury could only have found that he acted in self-defense.

When a defendant in a homicide prosecution claims self-defense, the State bears the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Batiste*, 16-321 (La. App. 5 Cir. 12/14/16), 208 So.3d 1028, 1033, *writ denied*, 17-300 (La. 11/17/17), 229 So.3d 929. The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1073, *writ denied*, 23-1588 (La. 4/23/24), 383 So.3d 608. A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force and may stand his or her ground and meet force with force. La. R.S. 14:20(C).

It is well established that the aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; *State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531, 544. In addition, while there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. *State v. Martin*, 20-141 (La. App. 5 Cir. 4/28/21), 347 So.3d 1061, 1068, *writ denied*, 21-

803 (La. 10/1/21), 324 So.3d 1054. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. *State v. Lavigne*, 22-282 (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 941. The determination of a defendant's culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. *Id*. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. *Sly*, 376 So.3d at 1074.

Here, the evidence presented at trial established that on May 17, 2019, defendant's group had been in an altercation at the Ideal Market scene with another group. During the altercation, Mr. Flores-Barahona was stabbed and defendant fired his gun at the other group. When defendant's group fled the scene in Mr. Martinez's Civic, the victim, accompanied by Ms. Jackson and Ms. Matute, followed defendant's group. Defendant and Mr. Juarez fired shots at the victim's vehicle as the victim pursued the Civic on Veterans Boulevard. The victim continued following defendant, insisting he wanted to take a picture of the Civic's license plate. The victim and his occupants did not fire gunshots or have a gun. Eventually, the victim lost sight of the Civic. Defendant's group thereafter attempted to get on the interstate, but made a wrong turn onto the service road. The victim then encountered defendant's group. As the victim's car passed the Civic, defendant shot the victim in the head.

During trial, Mr. Flores-Barahona and Mr. Ponce testified regarding the events and statements made while defendant's group was being followed by the victim. Mr. Ponce said that he feared for his life, but neither he nor anyone in defendant's group called the police for assistance. Also, there was no evidence

that the occupants of the victim's vehicle fired at defendant's vehicle and there was no evidence that the victim tried to use his vehicle as a weapon. The victim did not try to use his vehicle to hit Mr. Martinez's Civic, and the victim did not exit his vehicle and approach defendant's group. The victim's vehicle did not trap Mr. Martinez's vehicle as defendant asserted. Mr. Martinez was able to drive past the victim's vehicle and flee the scene. Defendant's flight from the scene after shooting the victim could be viewed as inconsistent with a theory of justifiable homicide. *State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531, 543. A defendant's flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. *Id.* (citing *State v. Cazenave*, 00-183 (La. App. 5 Cir. 10/31/00), 772 So.2d 854, 860, *writ denied*, 00-3297 (La. 10/26/01), 799 So.2d 1151).

As to the issue of identity, the State presented sufficient evidence to prove defendant was the person who killed the victim by firing a gun out of the Civic. While Ms. Jackson did not see who fired the fatal shot, she thought it came from the left side of the Civic. Mr. Ponce testified that defendant was seated in the back left of the Civic, and when the fatal shot was fired by defendant, he leaned across the middle seat and fired out of the back right window. While it appears there may have been some confusion as to which window the shots were fired out of, both Mr. Flores-Barahona and Mr. Ponce testified that defendant fired the gun out of the Civic. Mr. Flores-Barahona viewed video surveillance from both scenes and identified defendant as the shooter each time. Also, in the recorded phone call between defendant and Mr. Ponce, defendant stated, "I got him in the head."

As to whether the State sufficiently proved the assault by drive-by shooting, we find that the evidence established that defendant discharged a firearm from the Civic while on a public street with the intent to at least frighten the occupants of the victim's car, if not with the intent to kill or cause them harm. We find the jury

could have reasonably concluded that defendant was engaged in a drive-by shooting at the time he killed the victim.

Viewing the evidence in the light most favorable to the prosecution, we find that the record supports the jury's conclusion that defendant did not reasonably believe his life to be in imminent danger or that deadly force was necessary to prevent the danger. Thus, we find that the State provided sufficient evidence under the *Jackson* standard for the jury to find that it proved beyond a reasonable doubt that defendant did not kill in self-defense and the killing of the victim was not justifiable, and to support the jury's finding that defendant committed second degree murder.

Defendant also argues in part that he should have been convicted of manslaughter rather than second degree murder. The offense of manslaughter is defined as a homicide that would be first or second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31; *State v. Monterroso*, 22-390 (La. App. 5 Cir. 4/26/23), 361 So.3d 1177, 1190, *writ denied*, 23-745 (La. 11/21/23), 373 So.3d 447.

Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Instead, they are mitigating factors that may reduce the grade of the offense. *State v. Thompson*, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257, 1266, *writ denied*, 18-2077 (La. 9/6/19), 278 So.3d 372. In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. *State v. Burse*, 19-381 (La. App. 5 Cir. 2/12/20), 289 So.3d 690, 696, *writ denied*, 20-650 (La. 11/24/20), 305 So.3d 104. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. *Id.* An argument alone does not constitute sufficient

provocation to reduce murder to manslaughter. *Id.* at 697. The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. *Id.* at 696.

In the instant case, the jury was presented with manslaughter as a responsive verdict. While defendant contends that he should have been convicted of manslaughter, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. Defendant suggests that because the victim was following the vehicle he was in, the verdict should have been manslaughter. However, the record does not show that the shooting was the result of immediate provocation sufficient to deprive an average person of his self-control and cool reflection. Mr. Ponce described that the victim's car was going very fast. However, Ms. Jackson testified that the victim never tried to run the other car off of the road. Both Ms. Jackson and Mr. Ponce testified that the victim's car never hit the Civic. Ms. Jackson said they were never as close as a car's length away. Additionally, there was no evidence that the occupants of the victim's car possessed a gun or threatened defendant's group. Mr. Ponce stated the Civic was not hit by any bullets. Mr. Flores-Barahona said he never saw anyone from the other car shooting, and he did not remember anyone in his car saying that the people in the other car were shooting. Ms. Jackson and Mr. Ponce both indicated that the cars had lost sight of each other when the victim's car accidentally turned the wrong way on a one-way street and came upon the Civic. The jury, when presented with manslaughter as a responsive verdict, instead returned the second degree murder verdict. We find that the jury had a sufficient evidentiary basis upon which to find defendant failed to carry his burden of proof of sudden passion or heat of blood to reduce the offense to manslaughter.

*Obstruction of Justice*

In defendant's second assignment of error, he also challenges the sufficiency of the evidence to sustain his conviction for obstruction of justice. He argues the State did not present evidence that he hid or destroyed the gun, and the absence of a murder weapon alone does not automatically rise to the level of obstruction of justice. He states that no one testified that he threw away the gun and that he did not confess to hiding it. He argues that there was simply no evidence as to what happened to the gun after the shooting.

The State responds that the obstruction of justice charge was predicated upon defendant's disposal of the firearm he used at both scenes. It contends that while there was no direct evidence that the same firearm was used in the two shooting instances, the evidence was consistent with defendant using the same firearm both times. The State reasoned that the logical inference, based on the circumstantial evidence, is that defendant purposefully disposed of the firearm.

La. R.S. 14:130.1 provides that the crime of obstruction of justice, when committed with the knowledge that such act may affect a criminal proceeding, includes "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." This provision further states that "[t]ampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance… at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any [law enforcement] investigation." Here, the indictment specified that this charge pertained to the "intentional movement/removal of the handgun used in a shooting pertaining to the homicide investigation of Jesus Fructuoso."

Under La. R.S. 14:130.1(A)(1), obstruction of justice is a specific intent crime. "Specific intent" is the state of mind that exists when circumstances

indicate "the offender actively desired prescribed criminal consequences to follow his act." La. R.S. 14:10(1). To support a conviction, the State must prove that removal of evidence from a crime scene was carried out with "the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." La. R.S. 14:130.1(A)(1); *State v. Scott*, 23-22 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 54, *writs denied*, 23-1317 and 23-1318 (La. 3/19/24), 381 So.3d 707. Specific intent need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant. *State v. Everett*, 11-714 (La. 6/13/12), 96 So.3d 605, 619.

The knowledge requirement of the obstruction of justice charge is met if the perpetrator merely knows that an act "reasonably may" affect a criminal proceeding. The statute does not require the criminal proceeding to actually be affected; the perpetrator must merely know and understand that the act reasonably may affect the proceeding. *State v. Nicholas*, 10-866 (La. App. 5 Cir. 5/24/11), 67 So.3d 610, 615. Regarding the statute's requirement that the tampering be either by the intentional "alteration, movement, removal, or addition of any object or substance," the Supreme Court has stated that "nothing beyond 'movement' is required by the statute if accompanied by the requisite intent and knowledge." *State v. Tatum*, 09-1004 (La. App. 5 Cir. 5/25/10), 40 So.3d 1082, 1090 (citing *State v. Jones*, 07-1052 (La. 6/3/08), 983 So.2d 95, 101).

"When reviewing the sufficiency of the evidence of a conviction based on circumstantial evidence, the appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the reviewing court must determine whether the 'alternative hypothesis is sufficiently **reasonable** that a rational juror could not

have found proof of guilt beyond a reasonable doubt under *Jackson*.'" *State v. Dorsey*, 20-29 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 662-63, *writ denied*, 21-55 (La. 4/20/21), 313 So.3d 1255) (quoting *State v. Smith*, 06-318 (La. App. 4 Cir. 11/21/06), 946 So.2d 218, 221) (emphasis in original). *See also State v. Davis*, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1020 (same).

When the factfinder at trial reasonably rejects the hypothesis of innocence advanced by the defendant, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Mack*, 13-1311 (La. 5/7/14), 144 So.3d 983, 989 (quoting *State v. Captville*, 448 So.2d 676, 689 (La. 1984)). A reasonable alternative hypothesis is not one that could explain the events in an exculpatory fashion, but one that is sufficiently reasonable that a rational jury could not have found proof of guilt beyond a reasonable doubt. *Id*. "In all cases, the *Jackson* standard does not provide a reviewing court with a vehicle for substituting its own appreciation of what the evidence has or has not proved for that of the fact finder." *Id*. Rather, a reviewing court may impinge on the factfinder's discretion only to the extent necessary to guarantee the fundamental due process of law. *Id*.

In the present case, the jury rejected defendant's hypothesis of innocence on the obstruction charge, and we find no other hypothesis that raises a reasonable doubt of defendant's guilt. While viewing the video evidence, the jury heard testimony from Mr. Ponce, who pointed out that defendant responded with gunshots at the Ideal Market scene and also fired the fatal shot from Mr. Martinez's Civic. Mr. Flores-Barahona testified that defendant kept the gun when he exited the vehicle. The jury also heard testimony that defendant fled to Florida, where he ultimately was apprehended, and that the gun was never found.

Based on the evidence presented, the jury was satisfied that the State met its burden of proving that defendant intended to interfere with the investigation.

Applying the appropriate standard for evaluating the sufficiency of the evidence on the obstruction of justice claim, we cannot say the jury erred in finding defendant guilty of obstruction of justice beyond a reasonable doubt. We therefore affirm defendant's conviction and sentence for obstruction of justice.

*Suppression of Evidence*

In defendant's third assignment of error, he asserts the trial court erred when it denied his motion to suppress the evidence seized from his cell phone. The State argues that other evidence inculpated defendant and established probable cause to search his cell phone. It further contends that a *Miranda*[4] violation does not warrant suppression of evidence seized as "fruits" of that statement.

The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. La. C.Cr.P. art. 703 provides that a defendant may move to suppress any evidence on the grounds that it was unconstitutionally obtained. The defense has the burden of asserting the basis for its motion to suppress in order to provide the State with adequate notice so that it may prepare evidence addressing the defendant's claims. *State v. Darocha*, 20-176 (La. App. 5 Cir. 1/27/21), 309 So.3d 1041, 1051. Pursuant to La. C.Cr.P. art. 703(D), when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. Additionally, La. C.Cr.P. art. 703(E)(1) states in pertinent part, "An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief."

La. C.Cr.P. art. 841(A) provides: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Articulating a new basis for the motion to suppress for the first time on appeal is prohibited under La. C.Cr.P. art. 841, because the trial court would not be afforded an opportunity to

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

consider the merits of the particular claim. *State v. Berroa-Reyes*, 12-581 (La. App. 5 Cir. 1/30/13), 109 So.3d 487, 496. Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. *State v. Richardson*, 18-717 (La. App. 5 Cir. 9/4/19), 279 So.3d 501, 510, *writ denied*, 19-1722 (La. 7/2/20), 297 So.3d 764.

In the instant case, defense counsel filed omnibus motions, which in part asserted a vague motion to suppress the evidence to be used against defendant because it was "illegally and unlawfully obtained." Specific facts or grounds for the motion to suppress the evidence were not articulated. On June 16, 2021, a hearing on defendant's motions was held, and the State did not object to the procedural deficiencies in defendant's omnibus motions. When the trial court asked about the type of motions, defense counsel answered: "I believe we have Motion to Suppress Statement and then there are search warrants for phone dump and phone record." At the conclusion of the hearing, the trial court denied "any Motions to Suppress the Search Warrants," and defense counsel replied: "Note an objection for the record." The motion to suppress the statement was taken under advisement.

On June 25, 2021, defense counsel filed a Motion and Incorporated Memorandum in Support of Motion to Suppress Statement, which alleged specific facts regarding defendant's requests for an attorney that were not honored. The motion did not address the search warrants for defendant's cell phone. On June 29, 2021, the trial court granted the motion to suppress the statement. Thereafter, defense counsel did not re-urge a motion to suppress the evidence seized pursuant to the search warrant for defendant's cell phone.

On appeal, defendant explains that his statement to the police was suppressed, and because his suppressed statement formed the sole basis of

probable cause in the search warrant for his phone, the court erred when it denied the motion to suppress evidence. This specific argument was not raised pretrial, during trial, or in any post-trial motions. Consequently, we will not consider defendant's new basis regarding his motion to suppress the evidence.

*Competency of the Interpreter*

In defendant's fourth assignment of error, he asserts that the trial interpreter was not competent because the interpreter was frequently unable to translate witness testimony, which deprived him of his rights to a fundamentally fair proceeding and to appellate review based on a complete record. Defendant explains that during Mr. Ponce's testimony, the interpreter interrupted ten times to ask for clarification and an unknown person interjected that the translator was not completely translating. Defendant argues that because the interpreter repeatedly failed to translate the verbatim testimony of the two key witnesses, his right to a fair trial was significantly undermined. Also, he contends that because the same interpreter was tasked with explaining the proceedings for him, it also deprived him of his right to be present and undermined his ability to assist his attorneys in his own defense. The State contends that defendant did not object to the translations during trial, therefore any claim relative to the translation at trial is not preserved for review.

La. C.Cr.P. art. 25.1 requires an interpreter be competent to interpret or to translate the proceedings to defendant and to interpret or translate his testimony. However, there is no law in Louisiana that requires certified interpreters. *State v. Santos*, 09-789 (La. App. 5 Cir. 4/13/10), 40 So.3d 167, 172-73, *writ denied*, 10-1080 (La. 11/24/10), 50 So.3d 828. Throughout the three-day trial, six interpreters performed translations. Defense counsel did not question any of the interpreters about their qualifications, experience, or competency, nor did defense counsel object to the interpreters' translations.

In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841(A); *State v. Faciane*, 17-224 (La. App. 5 Cir. 11/15/17), 233 So.3d 195, 211, *writ denied*, 17-2069 (La. 10/8/18), 253 So.3d 797. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. *State v. Priest*, 18-518 (La. App. 5 Cir. 2/6/19), 265 So.3d 993, 1000, *writ denied*, 19-418 (La. 5/20/19), 271 So.3d 201. In *State v. Santos*, *supra*, this Court found that because there was no objection made by the defendant to either the qualifications or performance by the interpreters during the trial, the defendant did not properly preserve the issue for review.

Here, the record reflects that some of the interpreters asked for clarification and for some sentences to be repeated. During the testimony of Mr. Ponce, even though an unidentified person voiced concerns that one interpreter was not translating all of the testimony, defense counsel neither objected to inaccurate translation nor stated for the record the interpreter's name, the nature of the alleged inaccuracy, or what the actual, accurate interpretation should have been. Furthermore, at the point in the trial when the unknown person complained, the judge switched interpreters, replacing the interpreter about whom the complaint was made with another one of the six interpreters who had interpreted testimony through various parts of the trial. At no point during the trial did defense counsel object to any of the interpreters' qualifications or to any of the translations, nor was an objection made asserting that defendant's rights were affected by the interpreters' translations. As such, this issue has not been preserved for appellate review.

## ERRORS PATENT

We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

On January 19, 2023, when defendant was sentenced, the trial court ordered defendant to pay "a $1,250.00 sheriff's fee that's mandated by statute." The minute entry also reflects defendant was ordered to pay court costs, fines, and fees as indicated on his "Felony Fine Sheet." La. C.Cr.P. art. 875.1 requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial financial hardship to defendant or his dependents. According to the record, the trial court did not hold a hearing, and there is no waiver of the judicial determination of financial hardship. Accordingly, due to the requirements of La. C.Cr.P. art. 875.1, we vacate the portion of defendant's sentence which imposed court costs, fines, and fees. However, in light of defendant's life sentence, we decline to remand this matter for a financial feasibility hearing, which would appear to constitute an exercise in futility.

Further, while it appears the trial court failed to observe the twenty-four-hour delay between rulings upon post-trial motions and the imposition of sentence mandated by La. C.Cr.P. art. 873, defense counsel did not object to the immediate imposition of sentence nor raise a sentencing issue on appeal. As there is no evidence of prejudice resulting from the failure to afford defendant the statutory delay, this error is harmless. Finally, while the trial judge failed to specify whether the sentence imposed was to be served at hard labor, defendant was sentenced under La. R.S. 14:30.1, which mandates a life sentence at hard labor. The trial judge's failure to state that the sentence was imposed at hard labor is also harmless.

**DECREE**

For the reasons stated herein, we affirm defendant's convictions for second degree murder and obstruction of justice. We vacate the portion of defendant's sentence that imposed court costs, fines and fees. The remainder of defendant's sentences are affirmed.

**CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART**

# WICKER, J., CONCURS IN PART, DISSENTS IN PART

I concur with the majority opinion to affirm defendant's conviction and sentence for second degree murder and to vacate the portion of defendant's sentence imposing court costs, fines, and fees. However, I respectfully dissent from the majority's decision to affirm defendant's conviction and sentence for obstruction of justice. In my opinion, there is insufficient evidence to support defendant's conviction on this charge.

The indictment charges defendant with obstruction of justice by tampering with evidence, as set forth in La. R.S. 130.1(A)(1). It alleges that defendant tampered with evidence by the intentionally moving and/or removing the gun used in the shooting that resulted in the victim's death.

The State must prove each element of the crime beyond a reasonable doubt. *State v. Helou*, 02-2302 (La. 10/23/03), 857 So.2d 1024, 1027, *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In order to convict a defendant of obstruction of justice by tampering with evidence in this case, pursuant to La. R.S. 14:130.1(A)(1), the State was required to prove:

1) The obstruction was committed "with the knowledge that such act has, reasonably may, or will affect an actual or potential, past, or future criminal proceeding."

2) Defendant tampered "with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding."

3) The tampering was by the intentional "alteration, movement, removal, or addition of any object or substance."

4) The tampering was done "at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation" by law enforcement officers.

*See State v. Jones*, 07-1052 (La. 6/3/08), 983 So.2d 95, 101-102.

In my opinion, the State failed to prove the required elements of obstruction of justice beyond a reasonable doubt. Specifically, the evidence was

insufficient to prove defendant intentionally moved or removed the gun from the scene or that he did so with the specific intent of distorting the results of a criminal investigation or proceeding.

Defendant was one of five individuals in Mr. Martinez's car, and he was not driving. Of these individuals, only Mr. Ponce and Mr. Flores-Barahona testified at trial.[1] Mr. Flores-Barahona testified that he was in the backseat with defendant and Mr. Juarez, who were passing the gun back and forth and shooting from the car. According to Mr. Flores-Barahona, after the victim's car crashed, they left the scene. The State did not ask Mr. Ponce any questions about where the gun was when he left the car, whether it was thrown from the car, or whether there was any discussion regarding disposing or concealing the gun.

The majority states that Mr. Flores-Barahona testified that defendant kept the gun when he exited the vehicle that night. However, the transcript reveals that when the prosecutor asked Mr. Flores-Barahona if he knew what happened to the gun after the victim's car crashed, he replied, "No." He then indicated that Mr. Martinez dropped off defendant and Mr. Juarez near some apartments where they lived. When the State asked if he knew who had the gun when they got out of the car, Mr. Flores-Barahona stated, "I think with the gun, the one that kept the gun was Edwar [defendant]. That's what I think." This is not proof beyond a reasonable doubt.

The testimony revealed that the police officers never found the gun in this case, but there is no evidence that defendant discarded or disposed of the weapon. Detective Bradley and other officers testified that they canvassed the area where the victim's car crashed and did not find a gun or anything of evidentiary value. Ms. Jackson remembered screaming for help and calling 9-1-

---

[1] According to Detective Bradley, he attempted to locate Mr. Juarez, but Mr. Juarez's brother and girlfriend informed him that he had left the country. He further testified that, after Mr. Martinez pled guilty to obstruction of justice, he was deported from the country.

1. She acknowledged that on the call, she can be heard asking Ms. Matute if the people in the other car dropped or threw a gun when they passed by. Ms. Jackson testified that Ms. Matute responded negatively.

In *State v. Scott*, 23-22 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 54, *writs denied*, 23-1317, 23-1318 (La. 3/19/24), 381 So.3d 707, the defendant contended there was insufficient evidence to convict him of obstruction of justice, because the State did not definitively prove that he removed the firearm from the crime scene. The State responded that the evidence was sufficient to convict the defendant of obstruction of justice, because there was ample evidence for the jury to conclude that he fled the scene with the assault rifle he used to shoot the victims. *Id.* at 55. The State explained that video surveillance showed the defendant fleeing the scene, yet there was no footage of him leaving the rifle at the scene and the rifle was never recovered. *Id*.

The Fourth Circuit explained in *Scott* that, even assuming the State established that the defendant fled the crime scene with the rifle, this evidence was not sufficient to prove beyond a reasonable doubt that he possessed the specific intent to distort the police investigation. *Scott*, 372 So.3d at 55. The Court stated:

> The hypothesis that Defendant had the specific intent to distort the results of the police investigation when he left the crime scene is contradicted by the fact that he left behind shell casings (instead of collecting the shell casings ejected from his rifle), video surveillance (instead of destroying the video surveillance that documented his presence in the neighborhood shooting at the SUV), and witnesses (instead of harming the witnesses that were outside on the street at the time of the shooting incident).

The Fourth Circuit explained that from this evidence, a rational juror could have inferred that, in taking the firearm with him, the defendant gave no thought to interfering with the results of a criminal investigation or proceeding. Thus, the

Court found the evidence was insufficient to support the conviction for obstruction of justice and vacated the conviction. *Id.*

I have reviewed the caselaw and found similar cases in which obstruction of justice convictions have been upheld. However, in each of these cases, there was more evidence to support the conviction than in this case. Recently, in *State v. Alexander*, 23-540 (La. App. 4 Cir. 4/23/24), ---So.3d---, 2024 WL 1737390, the defendant was convicted of second degree murder and obstruction of justice, where the gun used in the shooting was never recovered. In affirming the obstruction of justice conviction, the Fourth Circuit acknowledged its prior decision in *Scott*, *supra*, but pointed out the State had presented additional evidence that the defendant had deleted records of a call to a cab company requesting transportation to the area where the murder occurred.

*See also State v. Bethley*, 22-849 (La. App. 4 Cir. 6/21/23), 368 So.3d 1148, 1155, *writ denied*, 23-965 (La. 1/17/24), 377 So.3d 242 (where the gun was not located at the scene of the crime and was never found by law enforcement, but the defendant testified he left the scene with the gun).

In the present case, even if defendant removed the gun from the scene of the shooting, the evidence was insufficient to prove, beyond a reasonable doubt, that he had the specific intent to distort the results of a criminal investigation or proceeding. The police never recovered the gun used to shoot the victim, and video surveillance shows the vehicle defendant occupied leaving the scenes at 18th Street and the I-10 Service Road. As in *Scott*, defendant here did not collect the shell casing from the scene at 18th Street, destroy any surveillance footage of him at either of the scenes, or harm the other occupants of either vehicle who witnessed the shooting. In this case, there was no testimony or evidence that defendant discussed removing the gun from the scene with the other occupants of the car or with anyone else after the shooting.

The majority finds there was sufficient evidence to prove defendant removed the gun from the scene with the specific intent of interfering with a criminal proceeding. In my opinion, this is a theory without proof beyond a reasonable doubt. I find the evidence presented does not show that, in taking the gun with him, defendant gave any thought to interfering with the results of a criminal investigation or proceeding.

For these reasons, the evidence was insufficient to prove the required elements of obstruction of justice beyond a reasonable doubt. Accordingly, I would vacate defendant's conviction and sentence for obstruction of justice.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 21, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-335

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
JANE C. HOGAN (APPELLANT)          DARREN A. ALLEMAND (APPELLEE)          DOUGLAS E. RUSHTON, JR. (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

**MAILED**
EDWAR LOPEZ #775540 (APPELLANT)          HONORABLE PAUL D. CONNICK, JR.
ELAYN HUNT CORRECTIONAL CENTER          (APPELLEE)
6925 HIGHWAY 74                          DISTRICT ATTORNEY
ST. GABRIEL, LA 70776                    LEO M. AARON (APPELLEE)
                                         ASSISTANT DISTRICT ATTORNEY
                                         TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053